**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KIMBERLEY BRADLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOPCO ASSOCIATES, LLC,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kimberley Bradley ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Topco Associates, LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action lawsuit on behalf of purchasers of TopCare Flushable Wipes-brand flushable wipe products (collectively, "TopCare Flushable Wipes"). Defendant markets and sells TopCare Flushable Wipes as "flushable" wipe products. In fact, TopCare Flushable Wipes are not flushable, in that they do not break apart or disperse in a reasonable period of time after flushing, resulting in clogs or other sewage damage.

2. Flushable wipes are a personal hygiene product that serve as an alternative to toilet paper. Flushable wipes are generally packaged as small to medium-sized moistened pieces of cloth, which come pre-cut into rectangles, folded, and wrapped for convenience. The

1

flushable wipe industry is growing at twice the rate of all other restroom wipe products. For example, in 2018, flushable wipes accounted for $2.1 billion in total sales.[1]

3. Consumers understand that "flushable" is commonly defined and understood to mean suitable for disposal by flushing down a toilet. As a result, reasonable consumers expect that "flushable wipe" products will disperse in a short amount of time after flushing and therefore will not clog or cause other operational problems in household sewage lines, septic systems, and other standard wastewater equipment. To be suitable for flushing, any "flushable" product must be able to quickly disintegrate into small pieces such that it can pass through sewer systems without issue.

4. Contrary to Defendant's representations, TopCare Flushable Wipes are not, in fact, flushable. TopCare Flushable Wipes do not break apart or disperse after flushing.

5. As such, Defendant engaged in widespread false and deceptive advertising by claiming TopCare Flushable Wipes are "flushable" (the "Flushability Claims"). Every package of TopCare Flushable Wipes prominently claims that the product consists of "Flushable Wipes."

6. Plaintiff and Class Members purchased defective flushable wipes designed, marketed manufactured, distributed, and sold by Defendant as "flushable." Further, Plaintiff and Class Members relied to their detriment on Defendant's representation that TopCare Flushable Wipes are "flushable." Plaintiff and Class Members would not have paid to purchase Defendant's TopCare Flushable Wipes – or would not have paid as much as they did to purchase them – had they known that they are not, in fact, "flushable." Plaintiff and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

---

[1] https://www.smithers.com/services/market-reports/nonwovens/the-future-of-flushable-wipes-to-2023 (last accessed Jan. 26, 2021).

7. The mislabeling of the TopCare Flushable Wipes renders the product completely worthless. There is no value to consumers for purportedly "flushable" wipes that are not actually flushable. Nevertheless, TopCare Flushable Wipes are labeled and sold as an alternative to toilet paper, and they command a significant price premium over non-flushable wipes and traditional toilet paper. Thus, Plaintiff and Class Members have thus been hit with a costly double-whammy: a premium purchase price for a worthless product.

## PARTIES

8. Plaintiff Kimberley Bradley is a citizen of New York, residing in Beacon, New York. In November 2020, Plaintiff Bradley purchased Tippy Toes Flushable Wipes for her personal use for approximately $2.59 from Price Chopper in Newburgh, New York. Prior to her purchase of TopCare Flushable Wipes, Plaintiff Bradley reviewed the product's labeling and packaging and saw that the TopCare Flushable Wipes were purportedly "flushable." Plaintiff Bradley relied on that labeling and packaging to choose her flushable wipes over comparable products. Plaintiff Bradley saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her TopCare Flushable Wipes were "flushable." Plaintiff Bradley relied on these representations and warranties in deciding to purchase her TopCare Flushable Wipes. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased TopCare Flushable Wipes on the same terms had she known these representations were not true. However, Plaintiff Bradley remains interested in purchasing a flushable wipes and would consider TopCare Flushable Wipes in the future if Defendant ensured the products were actually flushable. In making her purchase, Plaintiff Bradley paid a substantial price premium due to the false and misleading Flushability Claims. However, Plaintiff Bradley did not receive the benefit of her bargain because her TopCare Flushable Wipes, in fact, were not flushable. Plaintiff Bradley also

3

understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant. Plaintiff Bradley further understood that the purchase came with Defendant's representation and warranties that her TopCare Flushable Wipes were "flushable."

9. Plaintiff Bradley used her TopCare Flushable Wipes as directed by the product's packaging. After use, Plaintiff experienced plumbing issues, including the clogging of her home plumbing.

10. Defendant Topco Associates, LLC ("Topco") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Elk Grove, Illinois. Topco manufactures, sells, and/or distributes TopCare-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of TopCare Flushable Wipes. TopCo manufactured, marketed, and sold TopCare Flushable Wipes during the class period.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant.

12. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and pervasive contacts with the State of New York.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

does substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

**A.     Defendant's Misrepresentations Regarding TopCare Flushable Wipes**

14.     TopCare Flushable Wipes are sold in 42-count packs. On the front of the TopCare Flushable Wipes packaging, Defendant uniformly represents that the TopCare Flushable Wipes are "flushable:"





5

15. Defendant's advertising and marketing of TopCare Flushable Wipes is false and misleading and omits material information. TopCare Flushable Wipes prominently advertise on the front label that they are "flushable." Consumers reasonably expect that TopCare Flushable Wipes will, in fact, be "flushable" and therefore are safe for home use. Nowhere on the TopCare Flushable Wipes packaging does Defendant inform consumers that TopCare Flushable Wipes are not suitable for flushing. Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, and New York's consumer protection statutes.

### B.     Defendant's TopCare Flushable Wipes Are Not "Flushable"

16. Historically, toilet paper has been considered the benchmark for flushability because it begins to break down upon contact with water. Toilet paper will disintegrate into small pieces suitable for passing through sewer and septic systems without causing clogs. In contrast, flushable wipes – like TopCare Flushable Wipes – do not perform as advertised or marketed. Flushable wipes do not disintegrate effectively and can commingle to cause clogs and other sewage line issues. As stated by industry officials, "[f]lushable wipes are not truly flushable …. They might go down the drain, but they do not breakup like regular toilet paper."[2]

17. A product labeled flushable must break apart or disperse in a reasonable period of time such that it can clear sewage systems without causing clogs or otherwise negatively impacting sewage lines. However, Defendant's wipes do not break apart or disperse in a reasonable period of time, resulting in clogs or other sewage damage.

18. Indeed, studies highlight the nature of the mislabeling of flushable wipe products like TopCare Flushable Wipes. For example, in *Defining 'Flushabiliy' for Sewer Use* by Anum Khan et al. ("*Defining 'Flushability'*") researchers at Ryerson University in Toronto tested 101

---

[2] New York Times, *Americans Coping with the Coronavirus are Clogging Toilets* (Mar. 21, 2020), available at: https://www.nytimes.com/2020/03/21/us/flushable-wipes-clog.html (last accessed Jan. 21, 2021).

6

consumer products, included 23 wipes labeled as "flushable" and found that "most products tested for drainline clearance did not clear the drainline in a single flush, sometimes requiring up to six 6-L flushes …. Therefore, a consumer product is potentially incompatible with toilets and plumbing systems."[3] Further, while "all bathroom tissue tested fully disintegrated before the end of the 30-minute agitation period … none of the products labelled 'flushable' disintegrated within the allotted time to an extent required to pass the test."[4] As a result, they determined "it is evident that none of the products other than bathroom tissue are 'flushable.'"[5]

19. Further, the National Association of Clean Water Agencies ("NACWA") conducted a nationwide study addressing the cost of wipes in 2019, working closely with other national and state organizations.[6] The study was designed to provide conservative estimates of the likely cost of wipes in the United States at both the national and state levels, and is based on data collected from 25 utilities in 19 states, broadly representative of the population of utilities in the United States. Ultimately, NACWA estimates that wipes result in about $441 million per year in additional operating costs in the collection systems of clean water utilities in the U.S. and impose over $30,000 in additional collection system operating costs on the average utility per year. In some states, such as California and New Jersey, with relatively few utilities and high flows, the average utility pays significantly more.

20. Numerous independent tests demonstrate and confirm that wipes labeled and sold as being "flushable" will not break down or dissolve in any sewer system.

---

[3] Defining 'Flushability' for Sewer Use, Ryerson University, Final Report by Anum Kan et al. (Mar. 31, 2019), available at https://www.ryerson.ca/content/dam/water/Research/FinalReport-FlushablesApril1.pdf (last accessed Jan. 26, 2021).

[4] *Id.*

[5] *Id.*

[6] NACWA, The Cost of Wipes On America's Clean Water Utilities, https://www.nacwa.org/docs/default-source/resources---public/govaff-3-cost_of_wipes-1.pdf?sfvrsn=b535fe61_2 (last accessed Jan. 26, 2021).

21. Consumer Reports performed independent disintegration tests on flushable wipes that simulated toilet flushing conditions. A video clip depicting the tests shows that toilet paper broke down in about eight seconds, but after ten minutes, the flushable wipes did not break down, and still did not break down after being placed in a Kitchen Aid mixer for another ten minutes.[7] The video concludes: "Our advice: If you use these products, don't flush them down the toilet."[8]

22. In 2016, the City of Vancouver, Washington conducted a series of "in-sewer" tests of allegedly "flushable" wipes, dropping them into a manhole and observing their conditions at a downstream collection point. The study concluded that nearly all flushable wipes currently on the market in the United States "cannot be considered safe to flush since they travel through real sewers intact, with no dispersion."[9] The test found flushable wipes completely or nearly completely intact.[10]

23. In a video posted by the Water Environment Federation, pretreatment technician Tracy Stevens performed a "spin test" on multiple household products, including: one ply tissue, three ply tissue, regular toilet paper, plush toilet paper and multiple brands of flushable wipes.[11] The products were placed in beakers filled with water and a spinning blade to simulate flushing,

---

[7] Consumer Reports, Think twice about flushing wet wipes (Dec. 27, 2013), available at: https://www.consumerreports.org/cro/news/2013/12/think-twice-about-flushing-wetwipes/index.htm (last accessed Jan. 26, 2021).

[8] Eyewitness News, Consumer Reports: Flushable Wipes, available at: https://abc7ny.com/consumer-reports-plumbing-flushable-wipes-eyewitness-news/29868/ (last accessed Jan. 26, 2021).

[9] *See* Testimony of Cynthia A. Finley, Ph.D., Summary of Field Dispersion Tests, Attachment B at 9 (Mar. 15, 2017), available at: https://www.nacwa.org/docs/default-source/resources---public/2017- 03-15mdemtest.pdf?sfvrsn=4 (last visited Jan. 26, 2021).

[10] *Id.* at 11-12.

[11] Water Environment Federation, Will it Flush? Video, YOUTUBE (Jan. 4, 2012), available at: http://www.youtube.com/watch?v=SLTVqkXVvNk&feature=youtu.be (last visited Jan. 26, 2021)

8

and only toilet paper dispersed almost immediately.[12] After a few minutes, the flushable wipes were still completely intact, with some cloudiness in the beaker that was attributed to lotion on the wipe.[13] According to Stevens:

> If you define flushable as yes it will go down the toilet, then [ ] everything [tested] here is flushable. If you define it as whether it will make it to the treatment plant, then [ ] all of these things could eventually make it to the treatment plant and maybe one time out of ten, or one time out of twenty they don't, and with hundreds of thousands of people out there flushing these things down one out of ten, one out of a hundred, one out of a thousand, they are going to cause trouble.[14]

24. CBS4 Miami, after investigating damage caused by flushable wipes, hired I-P-S testing, the only independent testing facility in the country, to conduct a slosh box test. I-P-S put toilet paper, flushable wipes and non-flushable wipes through the same slosh box test. After one hour, the toilet paper was barely visible, but the flushable wipes and non-flushable wipes were fully intact. After two hours, the toilet paper had dispersed completely, the flushable wipes had "shredded some, but visible chunks still remain[ed]" and the non-flushable wipes had not changed at all. After three hours, there was "a trace amount" left of the flushable wipes and the non-flushable wipes remained "pretty intact."[15]

25. These problems are, or should be, known to Defendant. Yet, Defendant continues to market and sell TopCare Flushable Wipes as "flushable" wipes, and does so at a higher cost than comparable non-flushable wipes. For example "non-flushable" wet wipes from Up & Up cost approximately $0.016 per wipe while TopCare Flushable Wipes cost approximately $0.0616

---

[12] *See id.*

[13] *See id.*

[14] *See id.*

[15] CBS 4 Miami, The Trouble With Wipes In Your Pipes (Feb. 4, 2014), available at: http://miami.cbslocal.com/2014/02/04/the-trouble-with-wipes-in-your-pipes/ (last visited Jan. 27, 2021).

9

per wipe, respectively.  Thus, Plaintiff and members of the Class and Subclass paid nearly *four times* as much for TopCare Flushable Wipes flushable wipes due to the Flushability Claims.

26. Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiff and Class Members would not have purchased TopCare Flushable Wipes or would not have paid as much as they did for such products.  Thus, each Plaintiff and Class Member suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

27. Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

28. Plaintiff seeks to represent a class defined as all people who purchased any TopCare Flushable Wipes product that falsely advertised that the product was purportedly "flushable" during the applicable statute of limitations (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

29. Plaintiff Kimberley Bradley also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

30. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

31.     **Numerosity.**  The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of Members in the Class and in the Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiff, it is known by Defendant and may be determined through discovery.

32.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclass and predominate over any questions affecting only individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendant made false and/or misleading statements to the consuming public concerning the "flushability" of TopCare Flushable Wipes;

(b)     Whether Defendant omitted material information to the consuming public concerning the "flushability" of TopCare Flushable Wipes;

(c)     Whether Defendant's labeling and packaging for the TopCare Flushable Wipes is misleading and/or deceptive;

(d)     Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of TopCare Flushable Wipes;

(e)     Whether Defendant's representations concerning TopCare Flushable Wipes were likely to deceive a reasonable consumer;

(f)     Whether Defendant's omissions concerning TopCare Flushable Wipes were likely to deceive a reasonable consumer;

(g)     Whether Defendant represented to consumers that TopCare Flushable Wipes have characteristics, benefits, or qualities that they do not have;

(h) Whether Defendant advertised TopCare Flushable Wipes with the intent to sell them not as advertised;

(i) Whether Defendant falsely advertised TopCare Flushable Wipes;

(j) Whether Defendant made and breached express and/or implied warranties to Plaintiff and Class and Subclass Members about TopCare Flushable Wipes;

(k) Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and Class and Subclass Members; and

(l) Whether Plaintiff and Class and Subclass Members are entitled to damages.

33. **Typicality.** Plaintiff's claims are typical of the claims of the other Members of the Class and Subclass in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the "flushability" of TopCare Flushable Wipes. All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

34. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclass. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

35. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually

impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them. Even if Class or Subclass Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

36. In the alternative, the Class and Subclass may also be certified because:

(a) the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclass as a whole.

# COUNT I
### Violation Of New York's Gen. Bus. Law § 349
### (On Behalf Of The New York Subclass)

37.     Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

38.     Plaintiff Kimberley Bradley brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

39.     Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the "flushability" of its TopCare Flushable Wipes to mislead consumers into believing TopCare Flushable Wipes are flushable.

40.     Plaintiff Bradley has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Bradley purchased TopCare Flushable Wipes for her own personal use.  In doing so, Plaintiff Bradley relied upon Defendant's false, misleading, and deceptive representations that TopCare Flushable Wipes were flushable.  Plaintiff Bradley spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

41.     Defendant's deceptive acts and practices were directed at consumers.

42.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase TopCare Flushable Wipes and/or pay more for them under the false – but reasonable – belief that TopCare Flushable Wipes are flushable, when they are not.  By advertising so prominently that TopCare Flushable Wipes were flushable, Defendant proves that information about "flushability" is material to consumers.  If such information were not material, Defendant would

not feature it prominently on the front label of every TopCare Flushable Wipes package. As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of TopCare Flushable Wipes to unsuspecting consumers across New York. If Defendant had advertised its TopCare Flushable Wipes truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

43. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff Bradley and other Members of the New York Subclass were injured in that they: (1) paid money for TopCare Flushable Wipes that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the TopCare Flushable Wipes they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the TopCare Flushable Wipes they purchased had less value than Defendant represented.

44. On behalf of herself and Members of the New York Subclass, Plaintiff Bradley seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**Violation Of New York's Gen. Bus. Law § 350**
**(On Behalf Of The New York Subclass)**

45. Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

46. Plaintiff Kimberley Bradley brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

47. Defendant engaged in a campaign of false advertising with regard to the "flushability" of TopCare Flushable Wipes to mislead consumers into believing the TopCare Flushable Wipes they purchase are "flushable."

48. Plaintiff Bradley has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff Bradley purchased TopCare Flushable Wipes for her own personal use. In doing so, Plaintiff Bradley relied upon Defendant's false, misleading, and deceptive representations that TopCare Flushable Wipes would be flushable when they are not. Plaintiff Bradley spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

49. Defendant's deceptive acts and practices were directed at consumers.

50. Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations. If Defendant had advertised its TopCare Flushable Wipes truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased TopCare Flushable Wipes or would not have paid as much as they did for them.

51. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiff Bradley and other Members of the New York Subclass were injured in that they: (1) paid money for TopCare Flushable Wipes that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the TopCare Flushable Wipes they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the TopCare Flushable Wipes they purchased had less value than Defendant represented.

52.     On behalf of herself and Members of the New York Subclass, Plaintiff Bradley seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Breach Of Express Warranty
### (On Behalf Of The Class And The New York Subclass)

53.     Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

54.     Plaintiff Kimberley Bradley brings this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

55.     As the designer, manufacturer, marketer, distributor, and/or seller of TopCare Flushable Wipes, Defendant issued an express warranty by representing to consumers at the point of purchase that TopCare Flushable Wipes were flushable.  Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class and Subclass.

56.     In fact, TopCare Flushable Wipes do not conform to Defendant's representations about "flushability" because TopCare Flushable Wipes are not, in fact flushable.  By falsely representing TopCare Flushable Wipes in this way, Defendant breached express warranties.

57.     On February 8, 2021, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a warranty notice letter, which complies in all respects with U.C.C. 2-607.  The letter provides notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations

and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

58. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they: (1) paid money for TopCare Flushable Wipes that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the TopCare Flushable Wipes they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the TopCare Flushable Wipes they purchased had less value than Defendant represented. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class and Subclass Members would not have purchased the TopCare Flushable Wipes or would not have paid as much as they did for them.

## COUNT IV
### Breach of Implied Warranty
### (On Behalf Of The Class And The New York Subclass)

59. Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

60. Plaintiff Kimberley Bradley brings this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

61. Defendant routinely engages in the manufacture, distribution, and/or sale of TopCare Flushable Wipes and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

62. Plaintiff and Members of the Class and Subclass were consumers who purchased Defendant's TopCare Flushable Wipes for the ordinary purpose of such products.

63. By representing that TopCare Flushable Wipes would be flushable, Defendant impliedly warranted to consumers that TopCare Flushable Wipes were merchantable, such that

they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

64. However, the TopCare Flushable Wipes were not of the same average grade, quality, and value as similar goods sold under similar circumstances. Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

65. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they paid money for TopCare Flushable Wipes that would not pass without objection in the trade or industry under the contract description.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, seek judgment against Defendant as follows:

a. Certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass Members;

b. Declaring that Defendant's conduct violates the statutes referenced herein;

c. Finding in favor of Plaintiff, the nationwide Class and the New York Subclass against Defendant on all counts asserted herein;

d. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

e. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

f. Awarding Plaintiff and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

g. Ordering Defendant to pay pre-judgment interest on all amounts awarded; and

h. Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: April 15, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Frederick J. Klorczyk III*
      Frederick J. Klorczyk III

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
Brittany S. Scott*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
      bscott@bursor.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*